**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| FRANCISCO MÉNDEZ, | |
| Plaintiff, | |
| v. | CIVIL NO.: 12-1725 (MEL) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**OPINION AND ORDER**

**I.    PROCEDURAL AND FACTUAL BACKGROUND**

Francisco Méndez ("claimant") was born in 1968 and has a high school education. (Tr. 268)  On April 23, 2008, claimant filed an application for Social Security disability insurance benefits, alleging that he had been disabled due to lumbar spine degenerative discogenic disease and annulus budge at the L4-L5 level, lumbar L4 radiculopathy, a left medial meniscus tear, median nerve entrapment in both wrists, and major depressive disorders.  (Tr. 19-20)  The alleged onset date of the disability was May 19, 2006 and the end of the insurance period was December 31, 2011.  (Tr. 19.)  Since May 19, 2006, claimant has been unable to perform his past work as a welder for a construction company.  (Tr. 26.)  Claimant's application was denied initially on November 21, 2008 and upon reconsideration on March 9, 2009.  (Tr. 17.)  Claimant requested a hearing before an Administrative Law Judge ("ALJ").  He waived his right to appear at the hearing held on February 1, 2010, but he was represented by counsel and a vocational expert ("VE") testified at the hearing.  (Tr. 17)  The ALJ rendered a decision on June 17, 2010, concluding that claimant was not disabled prior to May 20, 2009, but became disabled on said date and continued to be disabled through the date of decision.  (Tr. 17.)  The Appeals Council

denied claimant's request for review on July 14, 2012. (Tr. 1.) Therefore, the ALJ's opinion became the final decision of the Commissioner of Social Security (the "Commissioner" or "defendant"). Id.

On September 6, 2012, claimant filed a complaint seeking review of the ALJ's decision pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 706, alleging that defendant's finding that claimant was not disabled between May 19, 2006 and May 20, 2009 was not based on substantial evidence. ECF No. 1, ¶ 3, 6. On March 8, 2013, defendant filed an answer to the complaint and a certified transcript of the administrative record. ECF Nos. 14; 15. Both parties have filed supporting memoranda of law. ECF Nos. 19; 20.

## II.    STANDARD OF REVIEW

The Social Security Act (the "Act") provides that "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." Irlanda-Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's decision must be upheld if the court determines that substantial evidence supports the ALJ's findings, even if a different conclusion would have been reached by reviewing the evidence de novo. Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st. Cir. 1981). The Commissioner's fact findings are not conclusive, however, "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

An individual is deemed to be disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). If the ALJ concludes that the claimant's impairment or impairments do prevent him from performing her past relevant work, the analysis then proceeds to step five. At this final step, the ALJ evaluates whether the claimant's residual functional capacity ("RFC"),[1] combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that the claimant can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g). Under steps one through four, the claimant has the burden to prove that he cannot return to his former job because of his impairment or combination of impairments. Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam). Once he has carried that burden, the Commissioner then has the burden under step five "to prove the existence of other jobs in the national economy that the claimant can perform." Id.

### III.   SUMMARY OF MEDICAL EVIDENCE

The medical evidence in the record reveals claimant sustained a workplace accident on December 28, 2005, at which time he slipped and suffered trauma to his back and left knee, and that he has a history of pain located in his lower back and left knee. He underwent arthroscopic surgery on May 17, 2006 due to a left medial meniscus tear. (Tr. 94-267) He has visited the emergency room at Clínica Española on numerous occasions in 2007 and 2008, due mainly to pain in his lower back. (Tr. 290-397).

Claimant developed a severe depressive disorder resulting from his physical impairments. On July 9, 2008, consulting psychiatrist Alberto Rodríguez Robles ("Dr. Rodríguez") completed a report describing claimant as depressed with psychomotor retardation. The report indicated

---

[1] An individual's RFC is the most that he or she can do in a work setting despite the limitations imposed by her mental and physical impairments. 20 C.F.R. § 404.1545(a)(1).

claimant's attention and concentration were diminished.  Dr. Rodríguez opined that claimant's prognosis was poor and that he did not possess the ability to handle his own funds.  (Tr. 268-72)

Psychiatrist Ronald Malavé ("Dr. Malavé") completed a report regarding claimant's mental health condition, indicating that claimant was treated from May 9, 2008 through November 18, 2008 with pharmacology and psychotherapy.  Dr. Malavé noted claimant's history of lower back pain and co-morbid depression.  He evaluated claimant on March 2, 2009, reporting that that claimant remained isolated most of the time, his mood was depressed, he was tense with psychomotor retardation, and his attention and concentration were poor.  He indicated in his report that claimant's memory was preserved, his judgment was fair, and he had a moderate insight into his illness.  (Tr. 343-57)  The "Summary Conclusions" section of the Mental Residual Function Capacity ("MRFC") Report Dr. Malavé completed indicates, *inter alia*, that claimant was extremely limited in his ability to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes and markedly limited in his ability to respond appropriately to changes in work settings.  (Tr. 355-56)

On May 20, 2009, an electrodiagnostic study revealed evidence of a severe left and moderate-to-severe nerve entrapment neuropathy at the wrist level.  Claimant was treated with bilateral wrist splints for nighttime use and with physical therapy.  (Tr. 728)

## IV.   ANALYSIS

Claimant's sole objection is that the ALJ's hypothetical presented to the VE did not accurately reflect all of claimant's functional limitations, relying on the standard from Arocho v. Secretary of Health and Human Services, 670 F.2d 374 (1st Cir. 1982) .  See ECF No. 19 at 12-14.  Arocho provides that in order for a VE's answer to a hypothetical question to be relevant, the information included in the question "must correspond to conclusions that are supported by

4

the outputs from the medical authorities." <u>Arocho</u>, 670 F.2d at 375.  Claimant argues that the ALJ's hypothetical did not mention that the alternative work had to be a low stress level job.[2] <u>See id.</u> at 13.  He contends that the ALJ ignored substantial evidence in failing to include this "limitation" in the hypothetical, and thus the testimony of the VE cannot constitute substantial evidence to support an ALJ's determination regarding claimant's lack of a disability between May 19, 2006 and May 20, 2009.  <u>See id.</u> at 14.

The omission of a functional limitation from the hypothetical to a VE warrants remand of the Commissioner's decision where inclusion of such information could have impacted the VE's conclusion and the ALJ's ultimate reliance on the VE's conclusion.  <u>See Aho v. Comm'r of Soc. Sec. Admin.</u>, CIV.A. 10-40052-FDS, 2011 WL 3511518 (D. Mass. Aug. 10, 2011) (remanding "for further proceedings to permit the ALJ to translate claimant's right-eye blindness into functional limitations and to examine whether jobs exist in significant number that she can perform" where ALJ failed to consider potential limitations from right-eye blindness and "if right-eye blindness in fact impose[d] functional visual limitations, it may [have] prevented plaintiff from working at the jobs proffered by the vocational expert); <u>Musto v. Halter</u>, 135 F.Supp. 2d 220, 234 (D. Mass. 2001) ("A hypothetical question that explicitly outlines the limitations on Musto's ability to sit could well alter the vocational expert's conclusion that Musto is capable of some sedentary employment, and thus this Court must vacate and remand for further proceedings."

---

[2] Claimant's memorandum of law states: "In particular the ALJ said nothing on [*sic*] his hypothetical regarding that one of the requirements for a possible alternative job was, 'that it had to be a low level stress job.'"  ECF No. 19, at 4, 13.  Claimant uses quotation marks to convey this alleged requirement, but provides no citation to a source from which this requirement derives, in either of the sections of his memorandum that contain this quotation.  <u>See id.</u>  The ALJ did find that claimant "was able to . . . tolerate the low levels of stress found in unskilled types of work," insinuating a limitation in claimant's ability to tolerate stress.  Tr. 21 (emphasis added).

In the case of caption, the ALJ determined, based on the medical evidence in the record, "that prior to May 20, 2009 the claimant was able to perform simple unskilled sedentary types of work." (Tr. 25)  The ALJ solicited the assistance of the VE in order "[t]o determine the extent to which [claimant's] limitations eroded the *unskilled* sedentary occupational base . . . ."  Tr. 27 (emphasis added).  The ALJ determined that claimant possessed the RFC:

> to perform sedentary work as defined in 20 C.F.R. [§] 404.1567(a) except using his hands for repetitive movements, lifting and carrying even less than 10 pounds, and doing more than simple repetitive tasks.   Mentally, the claimant has been able to understand, remember and carry out simple instructions, make day to day simple decisions, sustain attention and concentration for more than a two hours [*sic*] period, adjust to work changes and demands, and tolerate low levels of stress found in unskilled types of work. (Tr. 25)

At the hearing, the ALJ posed the following hypothetical to the VE:

> Consider a person with the same job experience, same age, and vocational and academic profile as the claimant.  In addition, a person whose maximum excertional level is sedentary, whose maximum mental capacity is to perform simple and repetitive tasks . . . .  Is there an occupation in the national or regional economy that this individual with these characteristics could perform?  (Tr. 38-39)

In response to the ALJ's hypothetical, the VE identified two unskilled positions—ampule examiner (in the Pharmaceutical Industry) and final assembler (in the Ophthalmological Industry—available in significant numbers in the national economy and in claimant's area.  Id. at 39-40.  Based on this testimony of the VE, the AJL concluded that other work existed in the national economy prior to May 20, 2009, from which he concluded that claimant was not disabled prior to said date.

Claimant suggests that the ALJ's RFC determination rests on his own assessment that unskilled work inherently involves low levels of stress for employees.  ECF No. 19, at 13, n 7.

The definition of unskilled work in the social security regulations is silent regarding the level of stress such work entails.  See 20 C.F.R. § 404.1568.  The regulations state:

> Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength.  For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed.  A person does not gain work skills by doing unskilled jobs.  Id.

While a correlation between unskilled and low-stress positions may indeed exist, it does not follow that unskilled work is necessarily low-stress.  Social Security Ruling 85-15 elaborates on this distinction, explaining:

> Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job.  A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job, for example, a busboy need only clear dishes from tables.  But an individual with a severe mental disorder may find unmanageable the demand of making sure that he removes all dishes, does not drop them, and gets the table cleared promptly for the waiter or waitress.  Similarly, an individual who cannot tolerate being supervised may be not able to work even in the absence of close supervision; the *knowledge* that one's work is being judged and evaluated, even when the supervision is remote or indirect, can be intolerated for some mentally impaired persons.  Any impairment-related limitations created by an individual's response to demands of work, however, must be reflected in the RFC assessment. Social Security Ruling 85-15 (emphasis in original).

When a claimant's mental impairments are at issue, there is a need to examine the individual's specific vocational abilities in light of the impairment.  Lancellotta v. Sec'y of Health & Human Servs., 806 F.2d 284, 285-86 (1st Cir. 1986) (reversing decision of the United States District Court for the District of Rhode Island's decision and remanding to the Secretary for an

assessment of Lancellota's vocational capabilities in light of his mental impairment where ALJ determined that Lancellota could perform low-stress jobs but made no findings regarding his ability to perform the basic work-related activities necessary for low-stress work). "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." Id. at 286 (citing Social Security Ruling 85-15); see also Social Security Ruling 85-16 ("Consideration of these factors [ability to understand, carry out and remember instructions; respond appropriately to supervision, coworkers and customary work pressures] is required for the proper evaluation of the severity of mental impairment.").

Thus, the relevant inquiry is whether the ALJ properly considered these factors and incorporated them into his RFC determination and in the hypothetical he subsequently posed to the ALJ. In reaching his conclusion that the claimant could perform "simple unskilled sedentary types of work" the ALJ considered Dr. Malavé's report, finding that "[w]hile [Dr. Malavé] reported that claimant's attention and concentration were poor the rest of the evidence indicated that while the concentration and attention were diminished the claimant was able to understand, remember and carry out simple instructions and was able to sustain attention and concentration for more than a two hours [sic] period." (Tr. 25) The ALJ's hearing decision is silent, however, with regard to claimant's capacity to respond appropriately to supervision, coworkers, and customary work pressures.

A hypothetical to the VE that included a finding that claimant was limited in his ability to respond to supervision and customary work pressures—i.e. tolerate various forms of workplace stress—could have altered the VE's conclusion that the individual from the ALJ's hypothetical

could work in these unskilled positions.  <u>Lancellotta</u>, 806 F.2d at 286 (citing Social Security Ruling 85-16) ("A substantial loss of ability to meet any of these basic work-related activities [the ability to understand, carry out and remember instructions;  to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting] would severely limit the potential occupational base.  This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.")  The ALJ relied on the VE's testimony that claimant could perform two unskilled positions in reaching his conclusion that claimant was not disabled between May 19, 2006 and May 20, 2009.  Therefore, if the ALJ finds "functional limitations" in claimant's ability to meet any of the basic work-related activities discussed in <u>Lancellotta</u>—i.e. tolerate various forms of workplace stress—his hypothetical to the VE should accurately reflect said limitations, so that the ALJ may properly rely on the VE's conclusion that jobs exist in sufficient numbers in the economy that the hypothetical individual could perform.

The ALJ erred in making an independent assumption that unskilled work is inherently low-stress, rather than incorporating the factors necessary to properly evaluate the impact of a mental impairment on claimant's vocational abilities into his hypothetical to the VE.  In light of this deficiency, along with the ALJ's subsequent reliance on the VE's testimony in reaching his disability determination, the court cannot find that the ALJ's decision is supported by substantial evidence and will remand the case for further development on this issue.  On remand, the ALJ shall pose a new hypothetical to the VE that does not rest on the assumption the unskilled work necessarily involves low levels of stress.  Although the ALJ need not expressly state in the hypothetical that any position the VE identifies must be a low-stress job, as claimant suggests in his memorandum (<u>See</u> ECF No. 19, at 4, 13), in view of the ALJ's RFC finding that plaintiff can

9

tolerate low levels of stress, at a minimum the hypothetical ought to include.factors associated with low-stress environments, such as the ability or inability to interact with supervisors and co-workers.  See Lancellota, 806 F.2d 286.

**V.    CONCLUSION**

Based on the foregoing analysis, the court concludes that the decision of the Commissioner was not based on substantial evidence.  Therefore, the Commissioner's decision is hereby VACATED and the case is REMANDED for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 10th day of February, 2014.

s/Marcos E. López
U.S. Magistrate Judge